UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY A. CRAWFORD,<br><br>        Petitioner,<br><br>vs.<br><br>JAY CHRISTENSEN,<br><br>        Respondent. | Case No. 1:18-cv-00076-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Petitioner Larry A. Crawford (Petitioner) filed a Petition for Writ of Habeas Corpus challenging his state court conviction. (Dkt. 3.) Respondent Jay Christensen (Respondent) filed a Motion for Summary Dismissal on procedural grounds. (Dkt. 12.) Petitioner then filed a Motion to Amend the Petition with a proposed Amended Petition. (Dkts. 15, 17.) These and several administrative motions are ripe for adjudication.

All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 6.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The Court takes judicial notice of the record from Petitioner's state court proceedings, which has been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following

Order dismissing the Petition for failure to satisfy the required statute of limitations period.

## PETITIONER'S MOTION TO AMEND PETITION

Petitioner brought only one claim in his original federal Petition—that he should have been permitted to withdraw his guilty plea. (Dkt. 3.) In the Initial Review Order, the Court recognized that such a claim could be either a federal or a state law claim, notified Petitioner that he could proceed only if it was a federal claim, and invited clarification. (Dkt. 7.)

On January 4, 2019, Respondent filed a Motion for Summary Dismissal, seeking dismissal of all of Petitioner's claims. In response, Petitioner filed a Motion to Amend, a proposed Amended Petition, and two supporting briefs. (Dkts. 15, 16, 19, 26.)

Petitioner does not contest Respondent's assertion that the original Petition was untimely. Instead, he argues the merits of his claims and sets forth an actual innocence argument to excuse the untimely filing. The Court will grant the Motion to Amend, but, to Petitioner's benefit, the earlier filing date of the original Petition will govern. As explained below, both the original Petition and the Amended Petition—regardless of the different claims asserted in each—are subject to Respondent's statute of limitations defense.

# RESPONDENT'S MOTION FOR SUMMARY DISMISSAL

1. **Habeas Corpus Review Standard of Law**

Federal habeas corpus relief under 28 U.S.C. § 2254 is available to petitioners who show that they are held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Summary dismissal is appropriate where "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *See* Rule 4 of the Rules Governing Section 2254 Cases. When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

2. **Statute of Limitations Standard of Law**

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from several triggering dates specified in 28 U.S.C. § 2244(d)(1)(A)-(D). Which trigger is applicable depends on the nature and timing of the petitioner's claims. The first trigger, § 2244(d)(1)(A), provides a means of calculating the limitations start date for the "application" as a whole (date of final judgment). The remaining three triggers require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate). *See Mardesich v. Cate*, 668 F.3d 1164 (9th Cir. 2012), relying in part on dicta in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005)).

In all instances, *one year* means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

The most common trigger is the first one, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). That date can be calculated as follows.

| **Action Taken** | **Finality Occurs** |
|---|---|
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*,

132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a tolling provision that stops or suspends the one-year limitations period from running during the time in "which a properly filed application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Because this particular statutory provision applies only to "pending" actions, the additional 21-, 42- and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. However, unlike direct appeal "finality," the term "pending" *does* extend through the date of the remittitur.[1]

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

---

[1] *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

**MEMORANDUM DECISION AND ORDER - 5**

## 3. Equitable Tolling Standard of Law

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, the Supreme Court clarified that, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. 408, 418 (2005). In addition, there must be a causal link between the lateness and the extraordinary circumstances. *See Bryant v. Schriro*, 499 F.3d 1056, 1061 (9th Cir. 2007) (holding that a petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

Ignorance of the law, without more, is not grounds for equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (a petitioner's "inability correctly to calculate the limitations period" and "lack of legal sophistication" are not "extraordinary circumstance[s] warranting equitable tolling")).

## 4. Actual Innocence Standard of Law

The Supreme Court of the United States has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 569 U.S. 383 (2013). "'Actual innocence means

factual innocence, and not mere legal insufficiency.'" *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

To make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 569 U.S. at 400 (quoting *Schlup*, 513 U.S. at 327). This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21.

5. **Background**

In a criminal action in Twin Falls County, Idaho, Petitioner pleaded guilty to and was convicted of one count of lewd and lascivious conduct with a minor under the age of sixteen.[2] Three other related charges were dismissed under Petitioner's plea agreement with the State of Idaho. Thereafter, Petitioner filed a motion to withdraw his guilty plea and two motions to correct an illegal or excessive sentence. All were denied. (State's Lodging A-1.)

Petitioner filed a direct appeal to challenge denial of his post-trial motions. The appeal was heard by the Idaho Court of Appeals. After the state district court rulings were affirmed, the Idaho Supreme Court denied a petition for review. The direct appeal concluded on January 19, 2010. (State's Lodgings B-1 to B-11.)

While the direct appeal was pending, Petitioner filed a third motion for reduction of sentence. (State's Lodging A-2, pp. 29-37.) The state district court did not rule on the

---

[2] Throughout this Order, the names of the minor victim and a witness have been replaced with their initials.

**MEMORANDUM DECISION AND ORDER - 7**

motion immediately, and neither party followed up with the court for resolution of the motion. The motion languished for several years.

While the direct appeal was pending, Petitioner also filed a petition for post-conviction relief in the state district court. (State's Lodging C-1.) The petition was summarily dismissed. (*Id.*) Petitioner was appointed counsel for his appeal, but counsel could find no arguable issues to appeal. Therefore, counsel was permitted to withdraw, and Petitioner was ordered to file a brief pro se if he intended to continue to pursue the appeal. Petitioner did not file a brief; therefore, the Idaho Supreme Court dismissed the appeal on August 27, 2010. (State's Lodgings D-1 to D-7.)

No state court action—other than the third sentencing motion—was pending between August 2010 and August 2015, when Petitioner filed a fourth sentencing motion. When the state district court denied that motion, it acknowledged that the third sentencing motion was still pending. The court denied both motions in the same order. Petitioner appealed denial of his fourth motion. The Idaho Court of Appeals affirmed denial. The Idaho Supreme Court denied a petition for review on April 5, 2016. (State's Lodgings E-1 to F-7.) No other state court action related to the conviction and sentence was filed after that date.

Petitioner's current federal Petition for Writ of Habeas Corpus was filed on February 13, 2018.

6. **Discussion**

Petitioner's judgment became final on April 19, 2010, ninety days after the Idaho Supreme Court denied his petition for review on direct appeal. Because Petitioner filed

**MEMORANDUM DECISION AND ORDER - 8**

several other actions challenging the same conviction and sentence, the federal statute of limitations was tolled from that date until April 5, 2016. The pertinent time period when Petitioner did *not* have any state court action pending was after the appeal from his fourth motion for a reduction of sentence between April 5, 2016, and February 13, 2018, when he placed his Petition into prison officials' hands for transmission to the federal court for filing.[3] Petitioner had 366 days after April 5, 2016, in which to file a federal Petition. The date of April 5, 2017 was the expiration of the federal statute of limitations. Petitioner's filing on February 13, 2018 was almost one year too late.

As a result, Petitioner must show grounds for an application of either the equitable tolling or the actual innocence exception to overcome his late filing. Without such a showing, this Court cannot adjudicate the merits of his claims.

Petitioner's briefing in support of his Amended Petition contains an argument that he is actually innocent. (Dkt. 1, 19, 27.) The Court has reviewed the entire record to determine whether Petitioner has met the standard for a showing of actual innocence.

Petitioner's Affidavit, in part, tells his version of events underlying the crime (verbatim):

> In November of 2006 I moved into the residence of one Darlene Rachelle Nicholas and her then 10 year old daughter B.A.N. Darlene was not only a long time friend of the family, since the mid 1970's, but also my former fiancé.

---

[3] *See Houston v. Lack*, 487 U.S. 266 (1988) (a legal document is deemed filed on the date a prisoner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court).

**MEMORANDUM DECISION AND ORDER - 9**

Soon after I moved in, it became apparent that B.A.N. had some major boundry issues. The first night I was there her mother spent the night with a male neighbor. When I went to take a shower, B.A.N. came into the bathroom and hid my clothes just so she could watch me emerge from the shower.

B.A.N. was constantly touching and grabbing me in inappropriate places such as my groin and/or buttocks. When I tried to explain to her why such behavior wasn't appropriate, she told me that she had been molested at the age of 5 years old by one of Darlene's former boy friends in Las Vegas.

Things quieted down for about a week. Then B.A.N. started to expose herself to me. One time she came out of the bathroom completely naked to answer the phone. When I told Darlene about it, she said B.A.N. had been that way all her life and there wasn't anything she could do about it. Once when I was in the shower B.A.N. came in and tried to watch me. Darlene caught her and told her to leave.

Then things got worse. I started to work the graveyard shift for Transystems. During one of my nights off I woke up to B.A.N. fondling my penis. I made her stop and told her to leave. I immediately went to tell her mother, Darlene. Darlene looked furious. Having prior knowledge of Darlene's volatile nature and willingness to be physical with B.A.N., told her that I would speak to B.A.N. about her actions. My sister and I both, on seperate occasions, spoke to B.A.N. about her action and she assured us that it would never happen again.

There was another incident that happened approximately a week after the one mentioned above. I had taken a sleep aid called Valarium Root so that I could sleep during the day because I had to work the graveyard that night. I woke up to B.A.N. on top of me. She was trying to insert my penis into her vagina. I pushed her off of me. I was so angry that I told her I was going to move out the next time I got paid. I also

**MEMORANDUM DECISION AND ORDER - 10**

> told her that I going to tell her mother why and that I didn't care what her mother did about it, or what her mother did to her.

(Dkt. 27, pp. 14-18.)

Petitioner alleges that B.A.N. was angry with him for disclosing her sexual advances to her mother or for otherwise not supporting her in family disputes. In retaliation, she fabricated elaborate stories of him tying her up and raping her, causing visible injury to her wrists; of having sexual intercourse with her over 20 times; and of engaging in other sexual activities together, such as watching and imitating pornographic movies and looking at pornographic magazines. An investigation ensued, and Petitioner was charged with four counts of lewd and lascivious conduct with a minor under sixteen, and one count of kidnaping. (State's Lodgings A-1, A-6, p. 16.)

With his briefing, Petitioner attaches a letter from his sister, which rejects a request from Petitioner that his sister provide an affidavit based on his, not her, recollection of events (verbatim):

> Larry I don't think you are rembering it the way I remember it.
>
> I wasn't the one who caught her with the wrong shoes, as far as the kitchen, I don't remember that at all!
>
> I was not the one who checked your bed! It was you and Darlene who you took in to prove that?!
>
> I went in your room to remove your things after you had packed them.
>
> Larry I just can't write the stuff you want me to and risk cometting purgery. It's a Federal crime,

**MEMORANDUM DECISION AND ORDER - 11**

FELONY. And seeing how I have already been on probation for something related to your case I would go to prison if they find out I am lying. I'm not good at it so they would find out one way or another.

As far as your plea, man I don't want to crush your hopes, but they did give you a chance to recant. I WAS there, right after the P.D. took your case.

After your letter in Jan of 2010 and in it you confessing that you [illegible] had done something to "take 50% of the blame" per your words I can't and won't help you by lying and stretching the truth.

Larry only you and B.A.N. know what really happened, I don't, not any more.

Up until I received your letter in 1/2010 I would have gone to my grave professing your innocence. After the letter and what you told me about throwing her on the bed and acting like "you were going to teach her a lesson" I do not know any more about your innocence.

I'm having enough to deal with in my life to write a leagle paper, that I know is not how I remember it, and be in constant worry about being caught. I just can't.

\* \* \*

Let me say this "I love you as my brother," but with that said "I do want you out" but not at the chance I might go to jail for lying for you.

Hoping you REALLY understand this.

All my Love,
Rhoni

**MEMORANDUM DECISION AND ORDER - 12**

(Dkt. 27, pp. 26-30.)

At sentencing, the judge cited four specific instances in the record where Petitioner admitted that he had genital-to-genital contact with the victim:

- On "Friday, March 16th, 2007, after being sworn in in a CPOR hearing, Crawford admitted to having a sexual relationship with B.A.N.; only it was at her instigation, according to him." Judge Harris then advised him he should not talk about it any more. (State's Lodging A-6, p. 46.)

- On July 16, 23 2007, Petitioner admitted in his plea hearing that he had genital-to-genital contact with the victim on December 24, 2006—"I did do it, okay?" (*Id.*, pp. 46-48.)

- Psychosexual evaluator Tom Nielsen stated in his report that "the defendant flat-out admits that he had sexual intercourse with a child" and that "he lied about his behavior because he didn't want people to know that he was having sex with a 12-year-old." (*Id.*, pp. 18, 48-49.) (Petitioner denies he made this statement.)

- The polygrapher, Mr. Morgan, indicated "During the pre-test interview, Larry Crawford made admissions of inappropriate sexual contact with 12-year-old B.A.N. (*Id.*, p. 49.)

In his allocution, Petitioner explained this by saying, "I'm not denying the contact. What I'm denying is her story." (State's Lodging A-6, p. 39.) In other words, Petitioner blames the victim for sexually assaulting him, not vice versa.

The record, no doubt, reflects that the victim likely had "poor interpersonal and behavioral boundaries," as the sentencing court acknowledged. (*Id.*, p. 55.) For example,

**MEMORANDUM DECISION AND ORDER - 13**

B.A.N. engaged in experimental sex with Petitioner's grandniece, J.B., documented by this passage B.A.N. wrote in J.B.'s diary (verbatim):

> 6 06
>
> Dear Dairy,
>
> When ever I came over to J.B.'s house I remember that we were exparementing with each other a lot at some times of the day we had sex. Keep this page forever. Thank you.

(Dkt. 19-1, p. 3.)

However, even crediting Petitioner's assertion that B.A.N. was the instigator of the sexual contact with him, Petitioner admits he did not immediately remove himself from the situation after several sexual encounters, but continued to have sexual contact with the child at her request. The sentencing court echoed the psychosexual evaluator's opinion:

> Many children in our society grow up in less-than-perfect homes with less-than-adequate parental supervision and develop poor social boundaries. This fact, however, does not justify a 45-year-old male with above-average intelligence to engage in sexual contact with one.

(State's Lodging A-6, p. 55.)

The Court has considered Petitioner's various arguments in support of his assertion of actual innocence, but the record does not support such an assertion. Petitioner's own Affidavit with exhibits and his other admissions of lewd conduct with the victim fail to show that it is more likely than not that no reasonable juror would have convicted him.

**MEMORANDUM DECISION AND ORDER - 14**

### 7. Conclusion

Because the original Petition for Writ of Habeas Corpus was filed too late and no exception applies to permit the Court to hear the merits of his claims, this entire action will be dismissed with prejudice.

**ORDER**

**IT IS ORDERED:**

1. Respondent's Motion for Extension of Time to File Answer (Dkt. 10) is GRANTED. The Motion for Summary Dismissal filed at Docket 12 is considered timely.

2. Respondent's Motion for Leave to File Excess Pages (Dkt. 11) is GRANTED.

3. Respondent's Motion for Summary Dismissal (Dkt. 12) is GRANTED on statute of limitations grounds.

4. Petitioner's Motion to File Amended Petition (Dkt. 15) is GRANTED, to the extent set forth herein above.

5. This entire action is DISMISSED with prejudice.

6. Petitioner's Amended Application to Proceed in Forma Pauperis (Dkt. 17) is MOOT. Petitioner already is proceeding in forma pauperis.

7. Petitioner's Motion to File Oversize Brief (Dkt. 20) is GRANTED.

8. Petitioner's Motion for Extension of Time to File Amended Federal Petition (Dkt. 21) is GRANTED, to the extent that the subject of the Motion is the Amended Petition filed at Docket No. 16; however, this "timely" filing does not affect the statute of limitations analysis.

9. Petitioner's Motion to File Attachment to Brief in Support of Amended Federal Habeas Corpus Petition (Dkt. 26) is GRANTED, permitting the briefing at Docket No. 27 to be considered.

10. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: September 26, 2019

Honorable Candy W. Dale
United States Magistrate Judge